*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
August 17, 2023

Plaintiff-Appellee,

v

No. 359547
Eaton Circuit Court
LC No. 2020-020127-FH

ANTHONY MICHAEL ASHLEY,

Defendant-Appellant.

Before: GADOLA, P.J., and M. J. KELLY and SWARTZLE, JJ.

PER CURIAM.

Defendant, Anthony Michael Ashley, was convicted by a jury of first-degree home invasion, MCL 750.110a(2), assault with a dangerous weapon (felonious assault), MCL 750.82(1), possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b(1), and third-degree fleeing and eluding a police officer, MCL 257.602a(3). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to serve 35 to 70 years in prison for the first-degree home invasion conviction, 10 to 15 years in prison for the felonious assault conviction, two years in prison for the felony-firearm conviction, and 10 to 25 years in prison for the third-degree fleeing and eluding conviction. The trial court ordered that the sentence for felony-firearm be served consecutively to the sentence for felonious assault, and that the additional sentences be served concurrently;[1] the trial court also ordered that all the sentences be served consecutively to defendant's existing parole sentence. We affirm defendant's convictions and sentences, but remand for the ministerial task of correcting the judgment of sentence to accurately reflect the consecutive sentence imposed for felony-firearm.

## I. FACTS

On April 7, 2020, defendant, his half-brother, Matthew Eckhart, and defendant's two minor stepchildren, committed a home invasion, which led to an assault and a subsequent high-speed

---

[1] As noted by defendant, the judgment of sentence erroneously indicates that the felony-firearm sentence was to be served consecutively to *each* of the other three sentences.

police chase. On that day, a homeowner was working in her basement with a handyman, Scottie Hatcher, when they heard footsteps upstairs. The homeowner went upstairs and saw a stranger, later identified as defendant's 13-year-old stepson, IR, standing in her kitchen. The homeowner demanded that IR leave and followed him out to the driveway, where she saw a van that she did not recognize. IR got into the back seat of the van and began honking the horn. Meanwhile, Hatcher had come up from the basement and discovered that his phone was missing from its charger in the kitchen. He went outside to the van and confronted IR about his missing phone.

At that time, defendant, Eckhart, and defendant's other stepson appeared from the far side of the homeowner's garage. Defendant had Hatcher's cell phone in his hand; Hatcher approached defendant and took the phone from defendant. Hatcher then reached into the van and took the keys out of the ignition; he told defendant and the others that they were not leaving until the police arrived. Defendant demanded that Hatcher return the keys, but Hatcher refused. Defendant's brother, Matthew Eckhart, then pulled a firearm from the van and approached Hatcher, pointed the gun at him, and demanded the van keys. Defendant also continued to demand the keys. The homeowner called the police, then pleaded with Hatcher to return the keys. Hatcher threw the keys on the ground; defendant retrieved the keys and drove away in the van with Eckhart and defendant's step-children as passengers.

Officers from the Eaton County Sheriff's Department, Michigan State Police, and Lansing Police Department sighted the van on Lansing Road and pursued the van onto eastbound I-96 and Waverly Road in Lansing. The officers attempted to stop defendant's van using roadblocking maneuvers, but were unsuccessful. During one of the attempted roadblocks, defendant ran into the side of a police car. Eventually, defendant drove onto Martin Luther King, Jr. Boulevard and drove north at speeds of over 100 miles per hour through Lansing. When defendant and the officers arrived at a T-intersection, the officers stopped the van by blocking it. Two of the passengers fled on foot; police pursued them and apprehended defendant and all the passengers. After a jury trial, defendant was convicted of first-degree home invasion, felonious assault, felony-firearm, and third-degree fleeing and eluding a police officer. Defendant now appeals.

## II. DISCUSSION

### A. SUFFICIENCY OF THE EVIDENCE

Defendant contends that his convictions of felonious assault and felony-firearm under an aiding and abetting theory must be vacated because the prosecutor presented insufficient evidence to establish that defendant knew about the firearm or that defendant assisted Eckhart with the possession of the firearm or the assault. We disagree that the evidence was insufficient.

We review de novo a challenge to the sufficiency of the evidence supporting a conviction. *People v Byczek*, 337 Mich App 173, 182; 976 NW2d 7 (2021). When evaluating the sufficiency of the evidence, we view the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could find the essential elements of the crime proven beyond a reasonable doubt. *Id*., citing *People v Harris*, 495 Mich 120, 126; 845 NW2d 477 (2014). In doing so, we draw all reasonable inferences in support of the verdict. *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018).

-2-

To support a conviction, the prosecution is required to prove each element of the offense beyond a reasonable doubt. *People v Eason*, 435 Mich 228, 238; 458 NW2d 17 (1990). The elements of a crime may be proven by circumstantial evidence and reasonable inferences arising from that evidence. *Oros*, 502 Mich at 239. The trier of fact determines the inferences that may be fairly drawn from the evidence and the weight to accord that evidence. *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002).

In this case, the jury found defendant guilty of felonious assault and felony-firearm under an aiding and abetting theory. With regard to felonious assault, MCL 750.82(1) provides, in relevant part, that "a person who assaults another person with a gun . . . or other dangerous weapon without intending to commit murder or to inflict great bodily harm less than murder is guilty of a felony. . . ." The elements of felonious assault are (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure the victim or place the victim in reasonable apprehension of an immediate battery. *People v Nix*, 301 Mich App 195, 205; 836 NW2d 224 (2013).

With regard to felony-firearm, MCL 750.227b(1) provides that "[a] person who carries or has in his or her possession a firearm when he or she commits or attempts to commit a felony . . . is guilty of a felony." The elements of felony-firearm are (1) the defendant possessed a firearm (2) while committing or attempting to commit a felony. *People v Bass*, 317 Mich App 241, 268-269; 893 NW2d 140 (2016).

At trial, the prosecution contended that defendant was guilty of felonious assault and felony-firearm because he aided and abetted Eckhart in those offenses. MCL 767.39 provides that "[e]very person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense." To support a finding that defendant aided and abetted the felonious assault and felony-firearm, the prosecutor was required to demonstrate that: (1) the underlying crime was "committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement." *People v Jackson*, 292 Mich App 583, 589; 808 NW2d 541 (2011) (quotation marks and citations omitted). Aiding and abetting includes all forms of assistance, including words or deeds that support or encourage the commission of a crime. *Id*. The intent element may be proved by demonstrating beyond a reasonable doubt that "the defendant intended to aid in the charged offense, knew the principal intended to commit the charged offense, or, alternatively, that the charged offense was a natural and probable consequence of the commission of the intended offense." *People v Robinson*, 475 Mich 1, 15; 715 NW2d 44 (2006). "[A] defendant who intends to aid, abet, counsel, or procure the commission of a crime . . . is liable for that crime as well as the natural and probable consequences of that crime." *Id*. at 3.

In this case, defendant and Eckhart embarked upon the felony of home invasion. There is no dispute that during the home invasion, Eckhart assaulted Hatcher with a gun, thereby committing the offenses of felonious assault and felony-firearm. Defendant argues that he did not aid and abet in the felonious assault or the felony-firearm because he did not know that Eckhart had a firearm in the van. Regardless of whether defendant knew about the gun before embarking on the home invasion, the evidence presented at trial demonstrated that defendant's words and

actions supported, encouraged, or incited the felonious assault committed by Eckhart. Defendant was arguing with Hatcher about the van keys when Eckhart retrieved a firearm from the van and pointed it at Hatcher. Defendant then continued to demand the keys to the van without expressing surprise or making any attempt to dissuade Eckhart from pointing the gun at Hatcher. Although Eckhart was holding the gun, defendant and Eckhart acted in concert to use the firearm to augment defendant's demand that Hatcher return the van keys to enable them to flee together in the van.

The same evidence supports the jury's finding that defendant supported, encouraged, or incited Eckhart's violation of the felony-firearm statute. When Eckhart pointed the gun at Hatcher, defendant did not protest or attempt to dissuade Eckhart. Rather, defendant took advantage of the firearm to intimidate Hatcher to return the van keys. Regardless of whether defendant knew about the gun before embarking on the criminal enterprise, defendant's actions after Eckhart retrieved the gun from the van supports the jury's finding that defendant aided and abetted Eckhart in using the gun to assault Hatcher.

Moreover, the offenses occurred while defendant and Eckhart were together engaged in the crime of home invasion. As discussed, "a defendant who intends to aid, abet, counsel, or procure the commission of a crime is liable for that crime as well as the natural and probable consequences of that crime." *Robinson*, 475 Mich at 3. An aider and abetter's knowledge of the principal's intent can be inferred from the circumstances surrounding the event, *People v Bennett*, 290 Mich App 465, 474; 802 NW2d 627 (2010), and even minimal evidence and reasonable circumstances suffice to demonstrate the defendant's knowledge, *People v Miller*, 326 Mich App 719, 735; 929 NW2d 821 (2019).

Here, defendant intentionally embarked upon the crime of home invasion with Eckhart. A natural and probable consequence of the home invasion was being confronted by someone during the home invasion, which led to an assault with a weapon during defendant's and Eckhart's attempt to flee the crime scene. Defendant is guilty as an accomplice for "those crimes that are the natural and probable consequences of the offense he intends to aid or abet." *Robinson*, 475 Mich at 15. Viewing the evidence in the light most favorable to the prosecution, we conclude that the evidence was sufficient to support defendant's convictions of felonious assault and felony-firearm.

### B. DEPARTURE SENTENCE

Defendant contends that the trial court abused its discretion by failing to provide proper justification for its upward departure from the minimum sentencing guidelines range for defendant's first-degree home invasion conviction. We disagree.

We review a sentence that departs from the applicable sentencing guidelines range for reasonableness. *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). We review the reasonableness of a sentence for an abuse of discretion, which occurs when the trial court fails to follow the principle of proportionality or fails to provide adequate reasons for the extent of the departure from the sentencing guidelines. *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). We review the trial court's factual determinations for clear error on appeal, *People v Lawhorn*, 320 Mich App 194, 205; 907 NW2d 832 (2017), and will find clear error if this Court is left with a definite and firm conviction that an error was made, *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015).

When imposing a sentence that departs from the sentencing guidelines, the trial court must justify the sentence sufficiently to facilitate appellate review. *Lockridge*, 498 Mich at 392. The trial court must explain "why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been." *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017) (quotation marks and citation omitted). In reviewing a departure sentence, this Court evaluates "whether reasons exist to depart from the sentencing guidelines and whether the extent of the departure can satisfy the principle of proportionality." *People v Steanhouse (On Remand)*, 322 Mich App 233, 239; 911 NW2d 253 (2017), vacated in part on other grounds 504 Mich 969 (2019). Considerations include whether the guidelines accurately reflect the seriousness of the crime, factors not considered by the guidelines, and factors considered by the guidelines but given inadequate weight. *Dixon-Bey*, 321 Mich App at 525. "[T]he trial court's articulation of the reasons for imposing a departure sentence must explain how the extent of the departure is proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Id*.

In this case, the minimum sentencing guidelines range for defendant's first-degree home invasion conviction was calculated at 99 to 320 months. The trial court departed upward from the guidelines by imposing a sentence of 35 to 70 years; the minimum sentence of 35 years (420 months) exceeded the minimum range by 100 months. A defendant's extensive criminal history and likelihood to reoffend are appropriate considerations supporting a departure sentence. *People v Odom*, 327 Mich App 297, 318; 933 NW2d 719 (2019). Here, in justifying the upward departure, the trial court observed that defendant's extensive criminal history, which included 31 felonies and 16 misdemeanors, began when defendant was 15 years old and only ceased when defendant was incarcerated. The trial court noted that "breaking and entering in the houses and stealing valuables from the owners of that home is [defendant's] main source of income, or what he would call his work." Defendant committed the instant first-degree home invasion while on parole for a second-degree home invasion conviction. The trial court also observed that on this occasion, defendant involved his two minor stepchildren in his criminal activity and appeared to be "training the next generation of criminals and thieves by including children" in the home invasion.

The trial court also emphasized that defendant had engaged "in one of the most dangerous fleeing and eluding [events the] court has ever seen" by driving at speeds well over 100 miles per hour on a main thoroughfare in the City of Lansing, running a red light at a major intersection. This conduct is not adequately considered by the sentencing guidelines. Fifteen points were assessed for Offense Variable (OV) 19, which states that 15 points should be scored when "[t]he offender used force or the threat of force against another person . . . to interfere with, [or] attempt to interfere with[,] . . . the administration of justice or the rendering of emergency services." MCL 777.49(b). The scoring of OV 19 does not account adequately for the fact that defendant engaged in a dangerous car chase and drove at speeds of over one hundred miles per hour through "a main thoroughfare in the City of Lansing."

We conclude that the trial court did not abuse its discretion by exceeding the sentencing guidelines when imposing defendant's sentence. The trial court justified the departure from the guidelines based on defendant's extensive criminal history and likelihood to reoffend, the seriousness of the offenses, defendant's involvement of his young stepsons in his criminal enterprise, and defendant's dangerous high-speed evasion of the police. The trial court's departure

of 100 months from the guidelines range of 99 to 320 months did not violate the principle of proportionality. See *Dixon-Bey*, 321 Mich App at 520.

## C. CORRECTION OF THE JUDGMENT OF SENTENCE

Defendant contends that remand is necessary to correct a clerical error in his judgment of sentence. We agree.[2] The felony information indicates that defendant's felony-firearm charge was predicated on the commission, or attempted commission, of felonious assault. "[A] felony-firearm sentence [is] consecutive only to the sentence for a specific underlying felony." *People v Clark*, 463 Mich 459, 463; 619 NW2d 538 (2000). At sentencing, the trial court correctly ordered that defendant's felony-firearm sentence would run consecutively only to the felonious assault sentence, while the remaining sentences for the first-degree home invasion and third-degree fleeing and eluding would run concurrently with the felony-firearm sentence. However, the judgment of sentence states that *all* defendant's sentences run consecutively to the felony-firearm sentence. We remand for correction of this error. See MCR 6.435(A); MCR 7.216(A)(7).

We affirm defendant's convictions and sentences. We remand to the trial court for the ministerial task of correcting the judgment of sentence. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Michael J. Kelly
/s/ Brock A. Swartzle

---

[2] We note that the prosecutor concedes this error.